IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| PAUL ZWIER, | § | |
| | § | |
| Plaintiff, | § | Civil Action File No. |
| | § | |
| v. | § | 1:20-cv-03265-MHC-RDC |
| | § | |
| EMORY UNIVERSITY and | § | |
| JAMES B. HUGHES, JR., | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendants. | § | |

## DEFENDANTS EMORY UNIVERSITY'S AND JAMES B. HUGHES, JR.'S ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT

Defendants Emory University ("Emory" or the "University") and James B. Hughes, Jr. ("Dean Hughes")[1] (together, "Defendants") respectfully submit their Answer and Defenses to the Complaint filed by Plaintiff Paul Zwier ("Plaintiff" or "Professor Zwier") in the above-referenced action. Defendants deny that they have engaged in any unlawful misconduct toward Plaintiff or are the cause of any reputational or other damages he claims to have suffered.

---

[1] Dean Hughes was the Interim Dean of the Emory University School of Law (the "Law School" or "Emory Law") during most of the relevant time frame. Emory has since hired a new Dean (Mary Anne Bobinski), and Dean Hughes has returned to his role as a professor in the Law School.

## **ANSWERS**

Defendants respond to the allegations contained in the numbered paragraphs of the Complaint as follows:

1.

In response to the allegations contained in Paragraph 1 of the Complaint, Defendants admit that Plaintiff purports to bring this action against them for unlawful race-based discrimination and retaliation in employment, in violation of 42 U.S.C. § 1981 ("Section 1981") and that Plaintiff seeks monetary damages and other relief. Defendants deny, however, that any such claims exist or that Plaintiff is entitled to any relief whatsoever.

2.

In response to the allegations contained in Paragraph 2 of the Complaint, Defendants admit that Plaintiff purports to assert a breach of contract action against Emory. Defendants deny, however, that any such claim exists or that Plaintiff is entitled to any relief whatsoever.

3.

In response to the allegations contained in Paragraph 3 of the Complaint, Defendants admit that Plaintiff purports to assert a civil action against Dean Hughes for libel *per se*.  Defendants deny, however, that any such claim exists or that Plaintiff is entitled to any relief whatsoever.

4.

The allegations contained in Paragraph 4 of the Complaint are legal conclusions to which no response is required.  To the extent a further response is required, Defendants admit that they do not contest this Court's jurisdiction in this matter but deny that they committed any unlawful act in this Court's jurisdiction or elsewhere.

5.

The allegations contained in Paragraph 5 of the Complaint are legal conclusions to which no response is required.  To the extent a further response is required, Defendants admit that they do not contest this Court's venue in this matter but deny that they committed any unlawful act in this Court's jurisdiction or elsewhere.

6.

In response to the allegations contained in Paragraph 6 of the Complaint, Defendants admit that the Law School is a professional school within Emory University and admit the remaining allegations of the Complaint.

7.

In response to the allegations contained in Paragraph 7 of the Complaint, Defendants admit that Dean Hughes was and currently is a member of the faculty at the Law School and that he served a two year term as the Interim Dean of the Law School beginning in September 2017 and ending in August 2019.   Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 7 of the Complaint.

8.

Defendants admit the allegations contained in Paragraph 8 of the Complaint.

9.

In response to the allegations contained in Paragraph 9 of the Complaint, Defendants admit that Professor Zwier has been a member of the Law School faculty since 2003.  Defendants further admit that during his employment at Emory, he has taught torts, evidence, and advanced international negotiations.   Defendants are without information or knowledge sufficient to form a belief as to the truth of the

allegation that Plaintiff has "authored numerous works on equity and inclusion, race relations, racism in courts, and the rule of law" and that allegation is therefore denied. Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 9 of the Complaint.

10.

Defendants deny the allegations contained in Paragraph 10 of the Complaint.

11.

In response to the allegations contained in Paragraph 11 of the Complaint, Defendants admit, upon information and belief, that no students or faculty have filed any formal grievances or complaints against Professor Zwier and that, prior to fall 2018, Professor Zwier had not been subject to any formal discipline by Emory. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegation regarding the number of students who have attended the Trial Techniques program, and they are therefore denied. Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 11 of the Complaint.

12.

Defendants admit the allegations contained in Paragraph 12 of the Complaint.

13.

In response to the allegations contained in Paragraph 13 of the Complaint, Defendants admit that the quoted language appears in the *Fisher* case and that the allegations in Paragraph 13 provide an incomplete summary of the facts alleged in that case. Defendants further state that the waiter's alleged use of the word "Negro" was not relevant to the legal issue presented in the *Fisher* case, which concerned whether the grabbing of the plate constituted a battery.

14.

Defendants are without information or knowledge sufficient to form a belief as to the truth of the facts alleged in Paragraph 14 of the Complaint, and they are therefore denied.

15.

Defendants admit that, without warning or explanation, Professor Zwier used the fully-articulated "n" word in discussing the *Fisher* case (which does not use that word) with a first year African American student on call. Defendants deny that Professor Zwier purposely used the word to "stimulate class discussion" or that he "questioned what the effect would be if the hotel employee used the word "n***er" in his statement while ejecting Mr. Fisher from the restaurant." In a recorded

apology delivered to the class the following morning, Professor Zwier admitted his use of the slur was "inadvertent and flippant" and stated that it "came out of [his] mouth way too cavalierly."  Students denied that Professor Zwier attempted to draw any connection between the word and the subject they were discussing, one telling Emory's Office of Equity and Inclusion ("OEI") that he "said it comfortably with ease and moved on, not drawing connections or using a hypothetical."  The student on call further denied that Professor Zwier used the term while asking a question. Other than as expressly admitted or stated herein, Defendants deny the allegations contained in Paragraph 15 of the Complaint.

16.

Defendants deny the allegations contained in Paragraph 16 of the Complaint. Defendants further state that this allegation is directly contradicted by repeated statements made by Professor Zwier in the immediate aftermath of the incident.  In his August 24, 2018 apology to the class, Professor Zwier proffered multiple different and internally inconsistent excuses for why he might have used the word, which he acknowledged were "reconstructions cause I don't remember exactly making the choice."  In a letter delivered to his Law School faculty colleagues on August 27, 2018, Professor Zwier questioned whether he had even said the word, stating:  "I'm not sure whether I used the 'N Word' because I don't remember

consciously choosing to use the word."  Among the possible explanations he provided were:  "I may have misspoken" and that he may have "mispronounced negro, or said something else."  He later told the media that he only fully accepted that he used the word after he "had a chance to talk to someone else in the class who I trust who says that I did say the 'N-word' itself."

17.

In response to the allegations contained in Paragraph 17 of the Complaint, Defendants admit that Professor Zwier did not direct the word at any individual student during the class in question, although he did use the word while calling on an African American student.  Defendants deny that Professor Zwier "used it as a teaching moment and integral part of the lecture and discussion of the *Fisher* case." Other than as expressly admitted or stated herein, Defendants deny the allegations contained in Paragraph 17 of the Complaint.

18.

In response to the allegations contained in Paragraph 18 of the Complaint, Defendants admit that Dean Hughes and others in administration received complaints from and held meetings with dozens of students (both African American students and students of other races) on the day of the August 23, 2018 class. Students expressed that they were incredulous that Professor Zwier casually used

the full "n" word with no apparent purpose or relation to the issue they were discussing.   Some expressed concern about having to remain in his class and wondered whether they would be treated fairly.   Many demanded immediate action. Defendants admit that Dean Hughes called Professor Zwier to notify him of the students' complaints that evening.   Other than as expressly admitted or stated herein, Defendants deny the allegations contained in Paragraph 18 of the Complaint.

19.

In response to the allegations contained in Paragraph 19 of the Complaint, Defendants admit that during Dean Hughes's discussion with Professor Zwier on August 23, 2018, Professor Zwier agreed to issue an apology to the class the next day.   Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 19 of the Complaint.

20.

In response to the allegations contained in Paragraph 20, Defendants admit that the President of BLSA sent an email to Professor Zwier that night in which she asked if a group of students could attend the class to support the class students. Defendants further state that the BLSA President explained in the email:   "I am

reaching out to you personally to understand the statement and the context of the statement from your point of view.  I believe it is important to hear both sides . . ."

Defendants admit that Professor Zwier responded to the email the following morning and agreed that they could attend.   Defendants further state that he apologized to the BLSA President for using the "n" word and stated:  "It has been a sleepless night as I have turned over in my head how the 'N word' came out of my mouth."  Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 20 of the Complaint.

21.

In response to the allegations contained in Paragraph 21 of the Complaint, Defendants admit that on August 24, 2018, Professor Zwier apologized to his class with BLSA representatives present.   Defendants deny the accuracy of Plaintiff's characterization of his explanation to the class (which was recorded by a student). Defendants further state that Professor Zwier admitted that his use of the word was "inadvertent and flippant" and stated that it "came out of [his] mouth way too cavalierly."  Professor Zwier continued by offering several hypotheses for why he might have used the word – which he acknowledged were "reconstructions cause I don't remember exactly making the choice."   Except as expressly admitted or

otherwise stated herein, Defendants deny the allegations of Paragraph 21 of the Complaint.

22.

Defendants deny the allegations contained in Paragraph 22 of the Complaint. Three students spoke following Professor Zwier's apology and his attempt at possible explanations for why he used the word.  After the class, students reported that they were unhappy that, instead of issuing a straight-forward apology, Professor Zwier stated he couldn't remember using the epithet and then went on to offer explanations for why may have used it.  One student spoke to OEI that afternoon and expressed offense at the apology, stating, according to OEI notes: "Prof. Zwier started by saying there is no excuse for his behavior and then followed with several excuses for why he may have said the N word . . ."  That afternoon, some students requested that they be transferred out of Professor Zwier's torts and evidence classes because they were uncomfortable with him as the professor.  That evening, the BLSA President sent an email to all student organization presidents in which she expressed disappointment with the apology, stating "I remain uncertain of what type of message his apology truly sent."  She asked for their support in attending a unity rally planned for August 29, 2018.  Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 22 of the Complaint.

23.

In response to the allegations contained in Paragraph 23 of the Complaint, Defendants admit that Dean Hughes sent Professor Zwier an email on the evening of August 24, 2018 in which he told Professor Zwier that Dean Hughes, the President, and the Provost had met and decided the "best course of action would be to have other faculty colleagues take over his classes" and that OEI would be conducting an investigation.   Defendants further state that before reaching this decision, Dean Hughes consulted with other members of Law School leadership, and it was widely agreed that it would be untenable to have Professor Zwier remain in the classroom pending the outcome of OEI's investigation based on the concerns and anxiety students had reported over having him as their professor.   The decision had to be made quickly because both evidence and torts are required courses, and classes had begun.   Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 23 of the Complaint.

24.

Defendants are without information or knowledge sufficient to form a belief as to the truth of the facts alleged in Paragraph 24 of the Complaint, and they are therefore denied.

25.

In response to the allegations contained in Paragraph 25 of the Complaint, Defendants admit that on the evening of August 24, 2018, the President, Provost, and Dean Hughes sent an open letter to the Emory Law community that (a) does not name Professor Zwier and begins by accurately stating: "Yesterday, a professor used the 'n-word' in a classroom when lecturing first-year law students on the topic of 1960s civil rights lunch counter protests in the South.  This offensive language was not part of the case law cited" and (b) states in part that the use of racial slurs is "unacceptable"; (c) accurately states that the term (not the unnamed professor) "reflects a tradition of white supremacy that we actively reject at Emory"; and (d) was subsequently posted on Emory's website and published in the campus newspaper.  Defendants note that Professor Zwier himself had acknowledged that his use of the word in class the day before was inexcusable.  Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 25 of the Complaint.

26.

In response to the allegations contained in Paragraph 26 of the Complaint, Defendants admit that the quoted language appears in the letter.  Except as expressly

admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 26 of the Complaint.

27.

Defendants deny the allegations contained in Paragraph 27 of the Complaint. Defendants assert that the letter accurately states that the unnamed professor used the term while discussing "the topic of 1960s civil rights lunch counter protests in the South" and that the "n" word "was not part of the case law cited."

Defendants further deny that the August 24 letter was responsible for any antipathy felt or expressed toward Professor Zwier.  Professor Zwier's own actions and statements both before and after the letter was sent are responsible for any such antipathy that arose.  This includes his decision to write a letter to his faculty colleagues on August 27, 2018 (erroneously dated August 17, 2018) in which he stated that he did not intend to use the word and offered several implausible explanations for why he did, such as that he "may have misspoken" or "mispronounced negro."  Professor Zwier's August 27 letter was published in the media and elicited criticism from students, faculty, and the community at large. Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 27 of the Complaint.

28.

Defendants deny the allegations contained in Paragraph 28 of the Complaint.

29.

Defendants deny the allegations contained in Paragraph 29 of the Complaint. Defendants further state that this allegation is contrary to statements made by Professor Zwier to colleagues corresponding about the incident on September 8, 2018 (which did not include Dean Hughes), where he stated: "I trust Dean Hughes is working hard at providing for a fair resolution of the situation that I caused by my actions. In my opinion, personal attacks on him are not justified and not warranted."

30.

Defendants deny the allegations contained in Paragraph 30 of the Complaint. Defendants state that Professor Zwier delivered copies of a letter to his faculty colleagues on August 27, 2018 in which he equivocated regarding whether he used the word and offered numerous, inconsistent explanations for why would have done so if he did. The letter was published by the media, and students from his torts class reported that they believed it provided an inaccurate account of what happened in the class. Defendants are unaware of any public apology issued on September 9, 2018. Professor Zwier issued an apology to the Emory Law community on

September 18, 2018 as part of an agreed-upon resolution with Dean Hughes that he actively sought out.

31.

Defendants deny the allegations contained in Paragraph 31 of the Complaint. Defendants further state that on September 13, 2018, Dean Hughes and Professor Zwier discussed resolving the situation outside of the OEI process in a way that would restore Professor Zwier to the classroom for the Spring semester and impose conditions that would address the concerns of the community. Professor Zwier said he fully agreed that this would be the best way to proceed.

On September 15, 2018, Dean Hughes sent an email to Professor Zwier that outlined a proposed resolution, which included (among other things) a restriction on teaching mandatory courses for three years, revisions to his teaching manuals, and an unqualified apology to the Law School community. Dean Hughes also asked for Professor Zwier's "express permission to share with the community this resolution . . . ." Professor Zwier responded that he was "fully prepared to accept all of the conditions of the agreement" but asked if they could reduce the length of time that he could not teach torts. Dean Hughes agreed to change the restriction to two years, and Professor Zwier "agreed to [the] terms below" (including the apology and Dean Hughes's announcement to the community) and thanked Dean Hughes for his

"willingness to work this through" with him.  The OEI investigation was suspended as part of this resolution.

As agreed, Dean Hughes announced the resolution to the Emory Law community by email on September 18, 2018.  That email contains the language quoted in Paragraph 31 of the Complaint, but it is neither false nor a misconstruction of events.  In the apology which Professor Zwier drafted himself and sent to the Law School community just minutes before Dean Hughes's September 18, 2018 email, Professor Zwier stated:  "I am writing to you to take responsibility for the harm I caused."  Professor Zwier "fully acknowledge[d] what a mistake it was to say the word" and wrote:  "Any attempt to explain ignores the fears and realities of racism that still haunt our society and my responsibility for protecting our community from it."

32.

In response to the allegations contained in Paragraph 32 of the Complaint, Defendants admit that Dean Hughes's September 18, 2018 email to the community contains the quoted terms of the resolution.  Defendants further note that Professor Zwier expressly agreed to these terms and agreed that Dean Hughes would share them with the Law School community.  In addition, far from issuing a harsh condemnation, Dean Hughes closed the announcement with an appeal for the

community's forgiveness and unity, writing: "We sometimes disagree among ourselves and disappoint each other, but the ties that bind us compel acceptance of our flaws and forgiveness of transgressions – especially when mistakes are acknowledged, sincere efforts to make amends are made, and forgiveness is sought. At this moment, we are presented with an opportunity to demonstrate and enhance our strength by drawing our community closer together. Let us seize it." Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 32 of the Complaint.

33.

Defendants deny the allegations contained in Paragraph 33 of the Complaint. Defendants further state that the Law School community was already fully apprised of Professor Zwier's varied explanations for his use of the slur and it was those explanations that made his prior attempts to apologize poorly received. Defendants further note that Dean Hughes spoke with numerous individuals (including students from the class, Professor Zwier, faculty, staff, alumni and members of the clergy, bench and bar) in formulating a proposed resolution. The "formal" investigation by OEI was cut short (consistent with Professor Zwier's wishes) as part of the resolution. Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 33 of the Complaint.

34.

In response to the allegations contained in Paragraph 34 of the Complaint, Defendants admit that the parties considered the classroom issue resolved after they reached their resolution, subject to Professor Zwier's compliance with the terms of the resolution.  Defendants deny that the resolution was announced on September 9, 2018.  Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 34 of the Complaint.

35.

Defendants deny the allegations contained in Paragraph 35 of the Complaint.

36.

Defendants admit the allegations contained in Paragraph 36 of the Complaint.

37.

Defendants admit the allegations contained in Paragraph 37 of the Complaint.

38.

In response to the allegations contained in Paragraph 38 of the Complaint, Defendants admit that Emory admitted Mr. Tolston to an LLM program that was originally supposed to involve one semester abroad and that instead Mr. Tolston

completed the LLM domestically.  Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 38 of the Complaint.

39.

In response to the allegations contained in Paragraph 39 of the Complaint, Defendants admit that Mr. Tolston was not a student in Professor Zwier's torts class on August 23, 2018 and that, despite requests from BLSA leadership and Law School administration that he not do so, he held a sign that read "I am not a n***er," and "Fire Zwier!" at the unity rally held on August 29, 2018.  Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 39 of the Complaint.

40.

In response to the allegations contained in Paragraph 40 of the Complaint, Defendants admit that Mr. Tolston is the author of a self-published book, <u>Black from Nebraska</u>.  Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining facts alleged in Paragraph 40 of the Complaint, and they are therefore denied.

41.

Defendants are without information or knowledge sufficient to form a belief as to the truth of the facts alleged in Paragraph 41 of the Complaint, and they are therefore denied.

42.

In response to the allegations contained in Paragraph 42 of the Complaint, Defendants admit that Professor Zwier told Mr. Tolston that he had been accused of being a "n***er-lover" (using the fully articulated "n" word) in his youth. Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining facts alleged in Paragraph 42 of the Complaint, and they are therefore denied. Defendants further note that Professor Zwier's alleged "shock" at Mr. Tolston's "unrelenting accusations" differs from the description of the conversation he provided a second student ("Student 2") on November 2, 2018, where he stated: "I thought [the discussion was] an intimate conversation of a person with good will from a person of good will who is trying to understand me and my background." Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 42 of the Complaint.

43.

Defendants are without information or knowledge sufficient to form a belief as to the truth of the facts alleged in Paragraph 43 of the Complaint, and they are therefore denied.

44.

Defendants are without information or knowledge sufficient to form a belief as to the truth of the facts alleged in Paragraph 44 of the Complaint, and they are therefore denied.

45.

Defendants are without information or knowledge sufficient to form a belief as to the truth of the facts alleged in Paragraph 45 of the Complaint, and they are therefore denied.

46.

Defendants are without information or knowledge sufficient to form a belief as to the truth of the facts alleged in Paragraph 46 of the Complaint, and they are therefore denied.

47.

Defendants are without information or knowledge sufficient to form a belief as to the truth of the facts alleged in Paragraph 47, and they are therefore denied.

48.

Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Mr. Tolston's alleged threats and Professor Zwier's response thereto, and they are therefore denied.   Defendants deny that Professor Zwier reported the incident to Dean Hughes.  Defendants further state that when Dean Hughes learned of the incident and confronted Professor Zwier, Professor Zwier acknowledged telling Mr. Tolston that he was called a "n-lover" in his youth because he played basketball with Black friends.  Defendants further admit that Dean Hughes distrusted Mr. Tolston and his motives, but state that he did not believe that Mr. Tolston's background or motives justified Professor Zwier's use of the slur a second time.  Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 48 of the Complaint.

49.

In response to the allegations contained in Paragraph 49 of the Complaint, Defendants admit that Mr. Tolston threatened to publish false statements about

Dean Hughes.  Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 49 of the Complaint.

50.

In response to the allegations contained in Paragraph 50 of the Complaint, Defendants admit that Student 2 emailed Professor Zwier to schedule a meeting with him and that Professor Zwier agreed to the meeting.  Defendants admit that Student 2 was an acquaintance of Mr. Tolston but are without information or knowledge sufficient to form a belief as to the truth of the allegation that they were friends. Defendants deny that Professor Zwier "was required [to agree to the meeting] by Hughes' conditions on his continued teaching" but note that meeting with students is a fundamental responsibility of Emory faculty.  Defendants further note that Student 2 had attended the apology Professor Zwier gave to his class on August 24, 2018, where he invited the students to share their feelings with him about the incident either publicly or in private.  Student 2 cited that invitation when she spoke with him on November 2, 2018.  Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 50 of the Complaint.

51.

In response to the allegations contained in Paragraph 51 of the Complaint, Defendants admit that Student 2 met with Professor Zwier on November 2, 2018,

that she asked permission to record their meeting, and that Professor Zwier agreed to the recording.   Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 51 of the Complaint.

52.

Defendants deny the allegations contained in Paragraph 52 of the Complaint. Defendants state that after Professor Zwier provided a brief explanation of his use of the word in his discussion with Mr. Tolston, Student 2 asked Professor Zwier whether he said the full word rather than the abbreviated version.  Professor Zwier confirmed that he used the full word "n***er-lover" during his conversation with Mr. Tolston.  Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 52 of the Complaint.

53.

In response to the allegations contained in Paragraph 53 of the Complaint, Defendants admit that Professor Zwier spelled out the word in his conversation with Student 2 and did not repeat the full word during their conversation.  Defendants further state during their conversation, Professor Zwier drew a distinction between his use of the word in the classroom setting and his use of it in a private setting, stating:  "I won't use the word in class, that I will in fact be very sensitive to it, but its use in a private conversation between two people as we talk about what our

experiences are, I did not feel like there was the same kind of harm that was to be caused or the ability to be misunderstood . . . ."  Student 2 remained calm throughout their conversation.   Professor Zwier, by contrast, became upset, agitated, and argumentative when Student 2 did not agree with his perspective.  He ultimately cut the conversation off and refused Student 2's offer to shake his hand, turning his back to her.  As she later reported to OEI, Student 2 felt that Professor Zwier was very disrespectful to her and that his inability to respond productively to a student who challenged his ideas made him unfit to be a professor.  Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 53 of the Complaint.

54.

Defendants deny the allegations contained in Paragraph 54 of the Complaint.

55.

Defendants deny the allegations contained in Paragraph 55 of the Complaint. Defendants state that following the meeting, Student 2 met with the Presidents of BLSA and the Student Bar Association ("SBA") and played the unaltered tape recording for them.  After hearing the tape, the two student leaders decided to arrange a meeting with the leaders of student organizations within the Law School to discuss an appropriate student response.  That meeting occurred on November 7, 2018 and

was attended by approximately 20 other student leaders.  With Student 2's consent, they played portions of the tape recording for these students, including the beginning portions where Professor Zwier admitted using the word and his reasons for doing so, and the later portions where Professor Zwier became angry with Student 2 and refused to shake her hand.  Because Student 2 wished to remain anonymous, however, the voices on the tape played to this larger group were modified in an attempt to protect her identity.  Upon information and belief, the modifications to the voices were not significant enough to disguise Professor Zwier's identity, and the modified version was not intended to and did not make him sound any more or less aggressive or angry than the unmodified version.  Students in this meeting were very upset and angry when they listened to the tape.  As a group, they decided to schedule a student town hall meeting for noon on November 9, 2018.

56.

Defendants deny the allegations contained in Paragraph 56 of the Complaint. The quoted language omits language without noting the omission, bolds language that was not bolded in Dean Hughes's email, and contains other inaccuracies.  In addition, the statements in Dean Hughes's email are not false, and the email was not sent to the "law school community."

Defendants state that on November 7, 2018 at 2:51 pm, the Student Bar Association and BLSA sent a letter addressed to the "Emory Community" stating: "**The problem has not been resolved.**  Professor Zwier continues to use the N word, and fails to understand the gravity of using that word when speaking to students."  The letter stated "[w]e must and are taking action" and invited all students to attend a meeting on November 9, 2018.

Defendants further state that Dean Hughes, who was travelling, expected that students would be upset and would begin approaching faculty about the situation. He believed it was important to notify the Law School faculty of what had been reported to him so they would not be caught off guard when confronted by students. Dean Hughes therefore sent an email to the Law School faculty (and not the entire Law School community) at 5:47 p.m., that read in part:

> It appears that Paul Zwier has used the "n-word," within our community, again.  This time, it is reported that (during the past week, or so) he first used the word during a conference with an African American student, then he used it again in a meeting with another student whose race is unknown to me.

This is a true and correct description of what had been reported to Dean Hughes.  He made clear that he was "in the process of gathering facts" but was "sharing this with you, even in advance of gathering all of the facts, because I suspect that you might hear about it from students or other sources."

57.

Defendants deny the allegations contained in Paragraph 57 of the Complaint.

58.

In response to the allegations set forth in Paragraph 58, Defendants admit that Dean Hughes sent the November 7, 2018 email to faculty and that he did not elaborate on the context of the meetings between Professor Zwier and the students because he was still investigating (as he indicated in his email).  Defendants further state that the purpose of the email was to alert faculty of the reports after the earlier email from the SBA and BLSA so they would not be surprised if approached by upset students and others.  Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 58 of the Complaint.

59.

In response to the allegations contained in Paragraph 59 of the Complaint, Defendants admit that Professor Zwier sent an email to Emory Law faculty on the night of November 7, 2018 in which he stated that the report to Dean Hughes that Professor Zwier used the "n" word with Student 2 was "a lie."  Defendants further state that Professor Zwier did not refute that Dean Hughes had received such a report or contradict other aspects of Dean Hughes's email.  Except as expressly admitted

or otherwise stated herein, Defendants deny the allegations of Paragraph 59 of the Complaint.

60.

Defendants deny the allegations contained in Paragraph 60 of the Complaint. The quoted language omits language without noting the omission and bolds language that was not bolded in Dean Hughes's email.  In addition, the statements in Dean Hughes's email are not false.

Defendants further state that Dean Hughes, another faculty member, and another member of administration met with students on November 8, 2018 to hear their concerns.  Students reported feeling very upset and offended by Professor Zwier's decision to use the word again, by his belief that it was justified because he was in a private setting, and by his disrespectful treatment of Student 2.

On November 9, 2018, Dean Hughes sent an email to all Emory Law students, which he forwarded to Emory Law faculty, that reiterated Emory's commitment to diversity, inclusion, and respect as core values and praised the community's unifying response following the incident earlier in the semester.  He then wrote:

> I recently received reports that Professor Paul Zwier used for a second time the same racial slur during a conversation at the law school.  I have begun the process of gathering the facts regarding

these allegations and working with University officials to outline
a process to address this situation.

These are true and accurate statements.

61.

Defendants deny the allegations contained in Paragraph 61 of the Complaint.
Defendants state that on November 12, 2018, Dean Hughes communicated to
Professor Zwier the decision to place him on a paid administrative leave pending the
outcome of an OEI investigation into his behavior.  Defendants deny that Professor
Zwier was suspended or that he was told he was suspended.  Defendants further state
that later that afternoon, Dean Hughes notified students, faculty, and Board members
by email that Professor Zwier had been placed on paid administrative leave.
Defendants deny that Dean Hughes informed them that Professor Zwier had been
suspended and further deny that the emails to students, faculty and Board members
referenced "multiple reports" that Professor Zwier had used the "n-word."  Rather,
the emails stated that Professor Zwier "has been placed on administrative leave
following reports that he recently repeated the same racial slur that he used in a
classroom lecture earlier this semester."

62.

In response to the allegations contained in Paragraph 62 of the Complaint,

Defendants admit that OEI completed its investigation in December 2018 and admits

that Professor Zwier remained on paid administrative leave through the end of the

2018-2019 school year.    Defendants further note that, following a thorough

investigation, OEI concluded that Professor Zwier's use of the "n" word in

conversations with students on August 23, 2018 and October 31, 2018 "served no

scholarly purpose" and violated Emory's harassment policies.    OEI recommended

that Professor Zwier be suspended without pay and without access to his office or

the Law School building for a period of time to be determined by Dean Hughes.

Defendants further state that Dean Hughes requested that Professor Zwier not attend

Law School events or go to the Law School building during his administrative leave

because of the disruption his presence would cause but deny that he was "banished."

Except as expressly admitted or otherwise stated herein, Defendants deny the

allegations of Paragraph 62 of the Complaint.

63.

Defendants deny the allegations contained in Paragraph 63 of the Complaint.

Defendants further state that OEI conducted a thorough investigation and

interviewed at least 15 individuals, including Professor Zwier (who again justified

his use of the word with Mr. Tolston in part because it "occurred in the privacy of my office with the door shut," expressed no remorse, and proclaimed himself "a victim, not a perpetrator"). OEI produced a report that spans 76 single-spaced pages and includes 45 exhibits. And it concluded that Professor Zwier's conduct – not Mr. Tolston's or Dean Hughes's – "has had broad effects on the law school community and more narrowly on students' educational environment."

Defendants further deny that the outrage was "minimal." Professor Zwier's conduct in fall 2018 caused the greatest disruption to the Law School community that Dean Hughes has witnessed in his 27 years there. And it was the tape recording of Professor Zwier's meeting with Student 2 that students heard with their own ears – not Dean Hughes's emails – that caused student uproar.

64.

In response to the allegations contained in Paragraph 64, Defendants admit that Mr. Tolston refused to participate in the investigation. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegation that he refused to communicate with anyone in OEI or any member of Emory's administration, and it is therefore denied.

65.

In response to the allegations contained in Paragraph 65 of the Complaint, Defendants admit that the BLSA President was not interviewed as part of the OEI investigation.  Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 65 of the Complaint, and they are therefore denied.

66.

Defendants deny the allegations contained in Paragraph 66 of the Complaint.

67.

In response to the allegations contained in Paragraph 67, Defendants admit that OEI did not conduct any additional investigation of the August 24, 2018 and October 31, 2018 incidents after it issued its report in December 2018.  Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 67 of the Complaint.

68.

In response to the allegations contained in Paragraph 68 of the Complaint, Defendants deny that Professor Zwier was suspended.  Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegation

that "multiple [unidentified] Emory faculty and students stated that it was Professor Zwier's White race that made it inappropriate for him to use any variation of the 'n-word'" and the allegation is therefore denied.  Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 68 of the Complaint.

69.

In response to the allegations contained in Paragraph 69 of the Complaint, Defendants admit that there are faculty of varied races (including Black and White) at Emory who have used the "n" word for legitimate academic purposes as part of their teaching and research  and who have not been disciplined or dismissed. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegation that such unidentified individuals have not been the subject of reproach.  Defendants further note that Professor Zwier, by contrast, had no academic purpose for his use of the term on either occasion.  Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 69 of the Complaint.

70.

In response to the allegations contained in Paragraph 70 of the Complaint, Defendants admit that Emory's Department of African American Studies published

an article reflecting on Professor Nagueyalti Warren's career in connection with her retirement.   Defendants further state that the article appeared the Winter 2018 edition of the Department's newsletter, after Professor Zwier had been placed on paid administrative leave.   Defendants admit that the end of the article contains a poem by Professor Warren that includes the fully-written "n" word and that no faculty member was disciplined or investigated for the publication.   Defendants further note that the use of the word in the poem was not accidental, cavalier, or flippant, but an integral component of the poem's power and meaning and part of Professor Warren's academic work.   Defendants further note that Professor Zwier has assigned course material for years that contains the fully-written "n" word without complaint, investigation, or discipline.   Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 70 of the Complaint.

71.

In response to the allegations contained in Paragraph 71 of the Complaint, Defendants deny that in the referenced article, Professor Yancy "writes about how he uses the n-word, regardless of whether it appears in any text he is discussing, without sanction, in his teaching at Emory."   Defendants admit, upon information and belief, that Professor Yancy has used the full "n" word in class but note that it is

germane to his pedagogy, and students are advised before selecting the class that the course will involve offensive language. Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 71 of the Complaint.

72.

In response to the allegations contained in Paragraph 72 of the Complaint, Defendants admit that an adjunct professor used a variation of the "n" word aimed at Native Americans in the fall semester of 2019 but deny the remaining allegations of Paragraph 72 of the Complaint.

73.

In response to the allegations contained in Paragraph 73 of the Complaint, Defendants admit that F.I.R.E. and William Carney publicly called for Professor Zwier's return to the classroom, and that Mr. Carney publicly called for Emory to be censured. Defendants further state, upon information and belief, that their opinions were based on Professor Zwier's inaccurate claim that he had deliberately used the word for an academic purpose. Defendants further state that F.I.R.E. and Mr. Carney were not privy to all of the facts and circumstances that influenced Dean Hughes's decision-making. Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 73 of the Complaint.

74.

Defendants deny the allegations contained in Paragraph 74 of the Complaint.

75.

In response to the allegations contained in Paragraph 75 of the Complaint, Defendants admit that on May 29, 2018, Professor Zwier wrote a letter to Dr. Aryeh Stein, Chair of the FHC.  In the letter, Professor Zwier claimed that his use of the word on both occasions was protected by academic freedom, stated his "non-negotiable demand is full reinstatement to teaching in the fall of 2019," and threatened to sue for race discrimination and other causes of action if his demands were not met.  Defendants further admit that the FHC is comprised of five Emory faculty members who hear, deliberate and make recommendations regarding discipline and termination of tenured faculty.  Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 75 of the Complaint.

76.

Defendants deny the allegations contained in Paragraph 76 of the Complaint.

77.

In response to the allegations contained in Paragraph 77 of the Complaint, Defendants admit that, through counsel, both Professor Zwier and the Emory Law School administration made multiple additional submissions to the FHC. Defendants further admit that the FHC held an evidentiary hearing on October 4, 2019 regarding whether there was "Cause" under the Gray Book to revoke Professor Zwier's tenure and terminate his employment.  Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 77 of the Complaint.

78.

In response to the allegations contained in Paragraph 78 of the Complaint, Defendants admit that the Emory Law School administration was represented by two attorneys from the law firm King & Spalding at the October 4, 2018 hearing. Defendants note that Professor Zwier was also represented by two attorneys from the law firm Parks, Chesin & Walbert at the hearing.  Defendants admit that the FHC required substantial pre- and post-hearing submissions on both sides' positions. Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 78 of the Complaint.

79.

Defendants admit the allegations contained in Paragraph 79 of the Complaint.

80.

Defendants admit the allegations contained in Paragraph 80 of the Complaint.

81.

Defendants deny the allegations contained in Paragraph 81 of the Complaint.

82.

In response to the allegations contained in Paragraph 82 of the Complaint, Defendants state that the FHC's recommendation letter is signed January 6, 2020 but it was not distributed to the parties until January 27, 2020.  Defendants further state that the FHC found that contrary to Professor Zwier's claim, he did not have a clear pedagogical purpose for his use of the "n" word on either occasion.  Defendants admit that the FHC found that the administration did not present "clear and convincing evidence" that Professor Zwier should be terminated.  Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 82 of the Complaint.

83.

In response to the allegations contained in Paragraph 83 of the Complaint,
Defendants admit that the FHC found that there was no evidence that Professor
Zwier neglected any of his academic duties or that he is an incompetent teacher.
Defendants further note that with respect to whether there was "other such adequate
cause" under the Gray Book, the FHC rejected Professor Zwier's claim that his use
of the term on either occasion was for pedagogical purposes.  It found that
"Mr. Zwier did use the explicit N-word on two occasions in interactions with
African-American students, and that neither use had a clear pedagogic objective."  It
further found that "Mr. Zwier has made inconsistent remarks concerning his
explanations as to the reasons he used the explicit N-word in class" and that
Mr. Zwier could and should have found better ways to resolve his disagreements
with both Mr. Tolston and [Student 2]."  However, the FHC indicated it did "not
believe that Mr. Zwier's mistakes rise to the level of 'other such adequate cause'
envisioned in Paragraph 12c of the Gray Book" and therefore did not recommend
termination of his employment.  Instead, the FHC found that the appropriate
remedies were, among other things, that "Mr. Zwier be reprimanded for the
unnecessary use of racially-charged language in class and in an interaction with a
student" and  "that Mr. Zwier not teach any required courses until the incoming 2018

students have graduated from Emory Law School, i.e., until Fall 2021, but may teach elective courses starting in Fall 2020."  Except as expressly admitted or otherwise stated herein, Defendants deny the allegations of Paragraph 83 of the Complaint.

84.

Defendants deny the allegations contained in Paragraph 84 of the Complaint. The FHC recommended that Professor Zwier be reprimanded, that he be allowed to teach only elective courses beginning Fall 2020, and that he be allowed to teach mandatory courses beginning Fall 2021.  Dean Bobinski, who became the new Dean during the middle of the FHC process, accepted the FHC's recommendations and implemented their recommendations.

85.

Defendants deny the allegations contained in Paragraph 85 of the Complaint.

86.

Defendants deny the allegations contained in Paragraph 86 of the Complaint.

87.

Defendants deny the allegations contained in Paragraph 87 of the Complaint. Defendants state that to the extent Professor Zwier became "unemployable", suffered financial harm, or suffered damage to his reputation, such harm is due to

his own statements and conduct, which were widely publicized as a result of his own actions. This includes, but is not limited to, Professor Zwier's statements in his August 27, 2018 letter to faculty where he stated he did not intentionally use the term and offered inconsistent and implausible justifications for why he did. These statements were published and widely criticized.

88.

Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 88 of the Complaint, and they are therefore denied. Defendants further state that to the extent those allegations are true, any lost income is not the result of any alleged wrongdoing by Defendants.

89.

Defendants incorporate all of their answers to the foregoing allegations as if fully restated herein.

90.

Defendants deny the allegations contained in Paragraph 90 of the Complaint.

91.

Defendants deny the allegations contained in Paragraph 91 of the Complaint.

92.

Defendants deny the allegations contained in Paragraph 92 of the Complaint.

93.

Defendants deny the allegations contained in Paragraph 93 of the Complaint.

94.

Defendants incorporate all of their answers to the foregoing allegations as if fully restated herein.

95.

The allegations contained in Paragraph 95 of the Complaint are legal conclusions to which no response is required.

96.

Defendants deny the allegations contained in Paragraph 96 of the Complaint.

97.

Defendants deny the allegations contained in Paragraph 97 of the Complaint.

98.

Defendants deny the allegations contained in Paragraph 98 of the Complaint.

99.

Defendants deny the allegations contained in Paragraph 99 of the Complaint.

100.

Defendants deny the allegations contained in Paragraph 100 of the Complaint.

101.

Defendants incorporate all of their answers to the foregoing allegations as if fully restated herein.

102.

In response to the allegations contained in Paragraph 102 of the Complaint, Defendants admit that the Gray Book sets forth the terms and conditions of faculty members' relationship with Emory.  The remaining allegations are legal conclusions to which no response is required.  To the extent a response is required, the remaining allegations are denied.

103.

Defendants deny the allegations contained in Paragraph 103 of the Complaint.

104.

Defendants deny the allegations contained in Paragraph 104 of the Complaint.

105.

Defendants deny the allegations contained in Paragraph 105 of the Complaint.

106.

Defendants deny the allegations contained in Paragraph 106 of the Complaint.

107.

Defendants deny the allegations contained in Paragraph 107 of the Complaint.

108.

Defendants incorporate all of their answers to the foregoing allegations as if fully restated herein.

109.

Defendants deny the allegations contained in Paragraph 109 of the Complaint.

110.

Defendants deny the allegations contained in Paragraph 110 of the Complaint.

111.

Defendants deny the allegations contained in Paragraph 111 of the Complaint.

112.

Defendants deny the allegations contained in Paragraph 112 of the Complaint.

113.

Defendants deny the allegations contained in Paragraph 113 of the Complaint.

114.

The allegations contained in Paragraph 114 of the Complaint are legal conclusions to which no response is required.

115.

Defendants deny the allegations contained in Paragraph 115 of the Complaint.

116.

Defendants demand a trial by jury on all claims so triable.

### **Prayer for Relief**

Defendants state that no response is required to the "Prayer for Relief" section of the Complaint, but to the extent any such response is required, Defendants deny the allegations and deny that Plaintiff is entitled to any relief whatsoever.

### **AFFIRMATIVE AND ADDITIONAL DEFENSES**

Defendants state the following affirmative and additional defenses to the Complaint as follows but do not assume the burden of proof on any such defenses except as required by applicable law with respect to the particular defense asserted. Defendants further reserve the right to assert other affirmative and additional

defenses and/or otherwise to supplement this Answer upon discovery of facts or evidence rendering such action appropriate.

## FIRST DEFENSE

The Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

## SECOND DEFENSE

Plaintiff's claims are barred because his race did not play a role in any adverse employment action.  Moreover, even if some impermissible motive were a factor in any such action, which it was not, the same decision would have been reached for legitimate, non-discriminatory, reasons and as such, was lawful.

## THIRD DEFENSE

Plaintiff's claims are barred because his alleged engagement in activities protected by 42 U.S.C. § 1981 did not play a role in any adverse action.  Moreover, even if some impermissible motive were a factor in any such action, which it was not, the same decision would have been reached for legitimate, non-discriminatory, reasons and as such, was lawful.

## FOURTH DEFENSE

The Defendants' employment decisions regarding Plaintiff were based upon lawful, legitimate, non-discriminatory, and non-pretextual reasons. Defendants'

actions toward Plaintiff were justified and in good faith and not based on Plaintiff's race.

## FIFTH DEFENSE

Neither Plaintiff's allegations nor the facts in this case establish that Defendants engaged in intentional discrimination with respect to Plaintiff.

## SIXTH DEFENSE

Plaintiff cannot demonstrate that he has suffered an adverse employment action taken by Defendants.

## SEVENTH DEFENSE

Plaintiff cannot demonstrate a causal link between any protected activity and any alleged adverse employment action taken by Defendants.

## EIGHTH DEFENSE

Plaintiff is not entitled to collect an award of punitive damages from Defendants because an award of such damages could violate the excessive-fines clauses of the United States Constitution.

## NINTH DEFENSE

Punitive damages are not appropriate because the Defendants acted in good faith and without malice in their treatment of Plaintiff.

## TENTH DEFENSE

All allegedly actionable statements by Dean Hughes to other individuals at Emory were subject to qualified privilege as they were directed to parties having a common interest in the subject matter of the statements.

## ELEVENTH DEFENSE

To the extent Dean Hughes published statements regarding Plaintiff's use of the n-word, the allegedly actionable statements were true or substantially true.

## TWELFTH DEFENSE

Dean Hughes's allegedly actionable statements cannot support a libel *per se* claim to the extent they were matters of opinion, not fact.

## THIRTEENTH DEFENSE

To the extent Dean Hughes published statements regarding Plaintiff's use of the n-word, the allegedly actionable statements were matters of public interest and concern and, therefore, cannot support a libel *per se* claim.

## FOURTEENTH DEFENSE

Plaintiff constitutes a limited purpose public figure in the context of this lawsuit, so as to make the actual malice standard the fault applicable to his libel claim.  Plaintiff cannot demonstrate that Dean Hughes acted with malice when

commenting on Plaintiff's actions in his public capacity and, consequently, Plaintiff's libel claim is barred.

### FIFTEENTH DEFENSE

Plaintiff's claims are barred by the doctrine of invited libel as he requested or consented to the publication of matters which he knew or had reasonable cause to suspect would be unfavorable to him.

### SIXTEENTH DEFENSE

Plaintiff's claim for breach of contract is barred due to his own material breach of the mandates, terms, and conditions of the Gray Book.

### SEVENTEENTH DEFENSE

Plaintiff's claim for breach of contract is barred based on Emory's substantial performance.

### EIGHTEENTH DEFENSE

Defendants reserve the right to seek all appropriate relief to which they are entitled, including, without limitation, relief directed to the lack of evidentiary basis for factual contentions against them and the filing of papers for the improper purpose.

## NINETEENTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, by the after-acquired evidence defense.

## TWENTIETH DEFENSE

The damages and injuries allegedly sustained by Plaintiff, if any, were not legally caused by Defendants, but instead were legally caused by intervening and superseding causes or circumstances.

## TWENTY FIRST DEFENSE

Plaintiff's damages are barred, in whole or in part, by any failure on his part to mitigate his damages.

## TWENTY SECOND DEFENSE

Plaintiff's damages, if any, must be reduced by the amount of any benefits received from collateral sources.

## TWENTY THIRD DEFENSE

Plaintiff's damages are barred, in whole or in part, because he has been paid all salary and benefits due under his contract and to the extent there was any breach, he has suffered no damage arising out of such breach.

Defendants reserve the right to rely upon any other defense that may become available or that may appear during the proceedings in this case and hereby reserve the right to amend their Answer to assert any such defense.

Submitted this 9th day of October, 2020.

s/ Michael W. Johnston
Michael W. Johnston
Georgia Bar No. 396720
mjohnston@kslaw.com
Rebecca Cole Moore
rmoore@kslaw.com
Georgia Bar No. 177309
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

Attorneys for Defendants
EMORY      UNIVERSITY      AND
JAMES HUGHES, JR.