IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| PAUL ZWIER, | § | |
| | § | |
| Plaintiff, | § | Civil Action File No. |
| | § | |
| v. | § | 1:20-cv-03265-MHC-RDC |
| | § | |
| EMORY UNIVERSITY and | § | |
| JAMES B. HUGHES, JR., | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendants. | § | |

## JOINT PRELIMINARY REPORT AND DISCOVERY  PLAN

1.     **Description of Case:**

     **(a) Describe briefly the nature of this action.**

     This is a single-plaintiff case brought by Paul Zwier ("Zwier") against his employer, Emory University ("Emory"), and James B. Hughes, Jr. ("Hughes"), a professor at Emory's School of Law ("Law School") who served as Interim Dean of the Law School during most of the events in question.  The Complaint alleges four counts:  (1) alleged race discrimination in violation of 42 U.S.C. § 1981 against Emory and Hughes; (2) alleged retaliation in violation of 42 U.S.C. § 1981 against Emory and Hughes; (3) alleged breach of contract against Emory; and (4) alleged libel *per se* against Hughes.

**(b)  Summarize, in the space provided below, the facts of this case. The summary should not be argumentative nor recite evidence.**

<u>**For Plaintiff**</u>:

Zwier is a tenured professor at the Law School and has been at the Law School since 2003.  On November 12, 2018, Defendants placed Zwier on administrative leave pending an investigation being conducted by the Emory Office of Equity and Inclusion ("OEI"), removed him from all teaching duties, and excluded Zwier from coming to the Law School facilities, including Zwier's office. The Law School claimed this punishment was based on two incidents.

The first incident occurred on August 23, 2018 and involved a report that Zwier had use the word "n***gr" while teaching a first-year torts class involving the case of *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Tex. 1967).  It was reported that Zwier had used the word instead of the word "negro" when discussing how the words could impact the underlying tort claim. On August 24, 2018, Zwier issued an apology to his first-year torts class and members of the Black Law School Student Association who chose to attend, and issued a subsequent written apology to the Law School community at large on September 9, 2018.

2

In addition to the public apologies, Defendants prohibited Zwier from teaching first-year classes for two years, required his participation in bias training, and required him to agree to revise his teaching manual. To resolve the matter, Zwier agreed to take these steps.

Then on October 31, 2018, Justin Tolston, a Black student pursuing his L.M.M. or Masters of Law at the Law School, requested a meeting with Zwier in his office and Zwier accepted. Tolston had never been enrolled in Zwier's classes at the Law School. During their October 31, 2018 meeting, Tolston accused Zwier of having a racist family upbringing and being an innate racist. Tolston repeatedly used the word "n***er" in making his accusations throughout the meeting with Zwier. Zwier responded by relating his upbringing in a family where racism was actively combatted by his parents and further shared an anecdote that other white people in his past had accused Zwier of being a "n***er-lover" because of his publicly espoused views on racial equality. Tolston then attempted to use Zwier's statement to blackmail him into writing an op-ed piece in the Washington Times, which Zwier refused. Tolston had made similar threats to other faculty, including Defendant Hughes. Zwier reported the incident to Hughes. Tolston and another student actively spread misinformation about the incident through the Law School. Immediately following both incidents described above, Hughes issued statements

to the Emory University community at large and beyond that Zwier contends mischaracterized the incidents and constituted libel per se.

Defendants then placed Zwier on administrative leave pending the outcome of an OEI investigation referenced above. The OEI investigation concluded in December 18, 2018 and recommended only a suspension of an undetermined length. Defendants kept Zwier on administrative leave through the end of the 2018-2019 school year maintaining his exclusion from the Law School entirely. In May 2019, after approximately six months of uncertain and indefinite leave, Zwier, reached out to the Emory Faculty Hearing Committee Chair ("FHC") and complained that he was being treated differently by Emory and Hughes because of his race. The FHC is a body of five Emory University faculty members who hear, deliberate and make recommendations regarding discipline and termination of tenured faculty.

In response to Zwier's contact with the FHC, on June 10, 2018, Defendant Hughes sent a letter to the Chair of the FHC at Emory announcing his decision to terminate Professor Zwier's tenured employment and asking the FHC to uphold that decision. The FHC held a full evidentiary hearing on October 4, 2019 over whether Hughes had articulated sufficient grounds to terminate Zwier's tenure. After significant delay and administrative requests that violated Zwier's contract

4

with Emory, the FHC issued its decision on January 27, 2020 and found that Hughes and Emory failed to demonstrate adequate cause to revoke Zwier's tenure and reinstated him to teaching. Zwier returned to teaching in August 2020.

**For Defendants:**

Zwier is a tenured professor at the Law School. In November 2018, he was placed on paid administrative leave following a series of events, including two instances in which he used the "n" word (once in class and once in a meeting with a student in his office). The first event occurred on August 23, 2018. Zwier was teaching the second day of torts to a group of newly-arrived 1L students when, in discussing a civil-rights-era case with an African American student on call, he without warning used the fully-articulated "n" word. The case they were discussing did not use that word. Following the class, a number of students complained to then-Interim Dean Hughes, who confronted Zwier. Zwier apologized to the class the next day. Zwier told the class that his use of the word was "inadvertent", "flippant", and "cavalier[]."[1] He stated that there was "no excuse" for his use of the word, but he then offered a variety of inconsistent explanations for why he might have used the word. The apology was not well received by many students who heard it. Zwier later told colleagues and the press

---

[1] A student tape recorded this class.

5

that he did not remember using the word, did not do so deliberately, and only accepted that he did say it when a student in the class he "trusted" (who is White) told him he had done so.  Many students reported feeling offended at this last statement as well.

This event caused enormous disruption at the Law School, with calls by some students and alumni for Zwier's termination.  Hughes nonetheless worked with Zwier over the next few weeks to reach a resolution that would allow Zwier to reintegrate into the Law School community.  The agreed-upon resolution suspended a pending investigation by Emory's Office of Equity and Inclusion, included a public apology agreed to by Zwier and Hughes, and included a restriction on Zwier's teaching mandatory classes for a two-year period, among other measures.

Less than two months later, on October 31, 2018, Zwier used the full "n" word again in a conversation with an African American student (Justin Tolston) in his office.  According to Zwier, when Tolston suggested Zwier must have had a racist upbringing, Zwier countered by saying that he had been called a "n***er-lover" as an adolescent.  The next day, another student ("Student 2", who is White) met with Zwier to discuss both the class incident and his statement to Tolston. Zwier justified his use of the fully-articulated "n" word with Tolston in part

6

because it "occurred in the privacy of my office with the door shut."[2]   Zwier became angry with Student 2 when she did not accept his point of view.   Zwier then cut short their conversation and refused her offer to shake hands.   Student reaction to Zwier's second use of the word with Tolston and his explanations to and treatment of Student 2 was extremely negative.   There were widespread calls for Zwier's termination and numerous students of color expressed dissatisfaction with and disengagement from the Law School.

In response to these incidents, Hughes placed Zwier on paid administrative leave and asked OEI to re-open its investigation.   After each incident Hughes informed the Law School community of the administration's response, but at no time did he make a false or libelous statement about Zwier.    When efforts to negotiate a separation package failed, Zwier asked the FHC to review the grounds for his administrative leave, and Hughes invoked the FHC's jurisdiction to make findings and recommendations regarding whether there was "Cause" to revoke Zwier's tenure and terminate his employment under the standards set forth in the Gray Book.  The FHC held an evidentiary hearing on October 4, 2019, finalized its findings and conclusions on January 6, 2020, and released its report to the parties on January 27, 2020.  In its report, the FHC rejected Zwier's claim that his use of

---

[2] With Zwier's agreement, Student 2 recorded their conversation.

the word on both occasions was protected by principles of academic freedom. The FHC found that "neither use [of the word] had a clear pedagogic objective" but stated that it did not believe that Zwier's conduct rose to the level of "Cause" for revocation of tenure or termination. The FHC recommended instead that Zwier be immediately removed from paid administrative leave, that he be reprimanded, that his teaching of mandatory courses be restricted for a period of time, and other remedial measures. Dean Mary Anne Bobinski (who became Dean in August 2019) largely accepted the recommendations of the FHC. Zwier's tenure was not revoked, he was removed from paid administrative leave, and he was returned to teaching effective Fall 2020. Zwier has been paid his full salary and benefits throughout.

**(c) The legal issues to be tried are as follows:**

The legal issues to be tried generally include, but are not limited to: (1) whether Defendants' actions toward Zwier (who is White) constitute race discrimination in violation of 42 U.S.C. § 1981; (2) whether Defendants' actions toward Zwier constitute retaliation in violation of 42 U.S.C. § 1981; (3) whether Emory breached a contract with Zwier by placing him on paid administrative leave and conducting the FHC hearing; (4) whether Hughes made any false, non-privileged statements of fact about Zwier that constitute libel *per se*; (5) whether

Zwier suffered any damages attributable to Defendants.

**(d)  The cases listed below (include both style and action number) are:**

**(1)   Pending Related Cases:**

None.

**(2)   Previously Adjudicated Related Cases:**

None.

**2.    This case is complex because it possesses one or more of the features listed below (please check):**

|       |      |                                                                 |
|-------|------|-----------------------------------------------------------------|
| _____ | (1)  | Unusually large number of parties                               |
| _____ | (2)  | Unusually large number of claims or defenses                    |
| _____ | (3)  | Factual issues are exceptionally complex                        |
| _____ | (4)  | Greater than normal volume of evidence                          |
| X     | (5)  | Extended discovery period is needed                             |
| _____ | (6)  | Problems locating or preserving evidence                        |
| _____ | (7)  | Pending parallel investigations or action by government         |
| _____ | (8)  | Multiple use of experts                                         |
| _____ | (9)  | Need for discovery outside United States boundaries             |
| _____ | (10) | Existence of highly technical issues and proof                  |
| _____ | (11) | Unusually complex discovery of electronically stored information |

9

3.      **Counsel:**

    **The following individually-named attorneys are hereby designated as lead counsel for the parties:**

    **Plaintiff:**

        A. Lee Park, Jr.
        PARKS, CHESIN & WALBERT, PC
        75 Founteenth Street, 26th Floor
        Atlanta, Georgia  30309

    **Defendant:**

        Michael W. Johnston
        KING & SPALDING LLP
        1180 Peachtree Street, NE
        Atlanta, Georgia  30309

4.      **Jurisdiction:**

    **Is there any question regarding this Court's jurisdiction?**

    _____Yes      \_\_X\_\_ No

    **If "yes," please attach a statement, not to exceed one page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority.**

5.      **Parties to This Action:**

    **(a) The following persons are necessary parties who have not been joined:**

        None.

**(b) The following persons are improperly joined as parties:**

    None.

**(c) The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:**

    None.

**(d) The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.**

**6.    Amendments to the Pleadings:**

**Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed.R.Civ.P. 15. Further instructions regarding amendments are contained in LR 15.**

**(a) List separately any amendments to the pleadings that the parties anticipate will be necessary:**

The parties do not currently anticipate any amendments to the pleadings.  All parties reserve the right to request leave to amend if circumstances warrant.

**(b) Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.**

7.   **Filing Times For Motions:**

**All motions should be filed as soon as possible. The local rules set specific filing limits for some motions. These times are restated below.**

**All other motions must be filed WITHIN THIRTY DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later. Local Rule 7.1A(2).**

**(a) *Motions to Compel:* before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.**

**(b) *Summary Judgment Motions:* within thirty days after the close of discovery, unless otherwise permitted by court order. Local Rule 56.1.**

**(c) *Other Limited Motions:* Refer to Local Rules 7.2A; 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.**

**(d) *Motions Objecting to Expert Testimony:* <u>Daubert</u> motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted.  Refer to Local Rule 7.2F.**

8.   **Initial Disclosures:**

**The parties are required to serve initial disclosures in accordance with Fed.R.Civ.P.26. If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection. NOTE: Your initial disclosures should include electronically stored information. Refer to Fed.R.Civ.P. 26(a)(l)(B).**

The parties will serve their initial disclosures on or before November 9, 2020.  The parties are coordinating regarding custodians and search terms for

electronically stored information, which will be produced within a reasonable timeframe following service of the initial disclosures.

**9.      Request for Scheduling Conference:**

**Does any party request a scheduling conference with the Court?  If so, please state the issues which could be addressed and the position of each party.**

No party requests a scheduling conference with the Court at this time.  All parties reserve the right to request a scheduling conference in the future if the need arises.

**10.     Discovery Period:**

**The discovery period commences thirty days after the appearance of the first defendant by answer to the complaint. As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.**

**Cases in this Court are assigned to one of the following three discovery tracks: (a) zero month discovery period, (b) four months discovery period, and (c) eight months discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.**

**Please state below the subjects on which discovery may be needed:**

At this time, Plaintiff anticipates seeking discovery on the following such subjects, among others.  This listing of topics does not

indicate that Defendants agree with Plaintiff's identified topics, and, will not preclude Defendants from asserting objections to specific discovery requests, as appropriate, or to amending this list:

(1) Plaintiff's claims asserted in this case, including without limitation the use of the word "n***er" or derivatives thereof by other Emory faculty;

(2) Defendants' actions in responding to Zwier and other faculty's use of such words or derivatives thereof;

(3) Communications between Defendants, including faculty and administration, regarding the events giving rise to Zwier's forced leave, the decision to terminate his tenure, and the FHC hearing and decision;

(4) The factual basis for Defendants' defenses; and

(5) Plaintiff's damages.

At this time, Defendants anticipate seeking discovery on the following such subjects, among others. This listing of topics does not indicate that Plaintiff agrees with Defendants' identified topics, and, will not preclude Plaintiff from asserting objections to specific discovery requests, as appropriate, or to amending this list:

(1) the factual basis for Plaintiff's claims;

(2) communications between Plaintiff and others regarding the events leading to his paid administrative leave and FHC hearing;

(3) the specific contractual provisions Plaintiff contends were breached and the actions Plaintiff contends Emory took that breached those provisions;

(4) the damages Plaintiff claims he suffered as the result of any breach of contract;

(5) the nature of the alleged unlawful employment practices Plaintiff claims he suffered;

(6) the factual basis for Plaintiff's claim that his race was the but for reason for any unlawful employment practice;

(7) any protected activity Plaintiff claims to have engaged in;

(8) the specific adverse actions that Plaintiff claims that Defendants took in retaliation for his engaging in protected activity;

(9) the damages Plaintiff claims he suffered as a result of any unlawful discrimination or retaliation;

(10) the specific communications by Hughes that Plaintiff contends constituted libel *per se*;

(11) the damages Plaintiff claims he suffered as a result of any statement by Hughes that he claims constitutes libel *per se*;

(12) Plaintiff's communications with the media;

(13) the reasons for any lost consulting income Plaintiff claims to have suffered;

(14) Plaintiff's communications with and about Hughes.

**If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:**

The parties jointly request the following changes to the discovery track:

(1) Based on the upcoming holidays, the anticipated schedules of counsel and witnesses, and the impact of the current pandemic on normal operations, the parties have agreed to, and hereby jointly request, that discovery be conducted over a six-month period. The parties believe that a six-month discovery period would provide adequate time to complete discovery (with the exception of any expert damages discovery as noted in paragraph 3 below) without imposing unnecessary disruption to witnesses and counsel over the holidays.

(2) In an effort to bring an orderly and logical sequence to discovery, the parties further agree, and hereby jointly request, that discovery be bifurcated as follows:  (a) the first three months to be devoted to written discovery (with no depositions occur during this period) and (b) the second three months to be devoted to depositions (as well as any additional written discovery that is timely served). With respect to the order of depositions, the parties agree that Plaintiff's deposition shall occur first at a mutually agreeable date and time and that Plaintiff shall be entitled to take the next deposition.

(3) In order to avoid potentially unnecessary expense, the parties further agree, and hereby request, that any expert damages discovery be deferred until after the Court's final ruling on any summary judgment motion filed by Defendants.  The parties agree to promptly meet and confer following such ruling to determine whether any such expert discovery is needed and, if so, the proposed schedule for any such discovery.

**11.    Discovery Limitation and Discovery of Electronically Stored Information:**

**(a) What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?**

The parties are not proposing changes in applicable discovery limitations at

this time.  If during the course of discovery any party determines that he or it will

need to depart from any of the discovery limitations imposed by the Rules, the

parties will confer and attempt to reach agreement regarding the scope of any

such departure prior to seeking relief from the Court.

**(b) Is any party seeking discovery of electronically stored information?**

_____X_____Yes            _____No

**If "yes,"**

(1) **The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:**

All parties seek the production of electronically stored information.  Plaintiff

has provided the names of custodians whose electronically stored information he

seeks to discover and proposed search terms and date limitations.  Defendants have

proposed search terms and date limitations for Plaintiff's production of his

electronically stored information.  The parties are in the process of collecting the

information for the named custodians in a format that will enable them to assess

the volume of data involved.  Once this process is complete, the parties will confer

regarding the protocols for production of electronically stored information by all

parties and, if unable to reach agreement, will seek a scheduling conference with

18

the Court.

**(2) The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:**

The parties have agreed to produce electronically stored information in TIFF format.

**In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.**

**12.    Other Orders:**

**What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule l 6(b) and (c)?**

The parties agree to meet and confer concerning the terms of a proposed confidentiality and protective order under Rule 26(c) and expect to stipulate to the terms and submit a consent protective order for the Court's approval.

**13.    Settlement Potential:**

**(a)    Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on October 26, 2020 and that they participated in settlement discussions. Other persons who participated in the settlement discussions are listed according to party.**

For plaintiff: Lead counsel (signature):  /s M. Travis M. Foust

Other participants:          None

For defendant: Lead counsel (signature):  /s Michael W. Johnston

Other participants:     Rebecca Cole Moore and Ronni D. Solomon

**(b)   All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:**

(_____) A possibility of settlement before discovery.
(__X__) A possibility of settlement after discovery.
(_____) A possibility of settlement, but a conference with the judge is needed.
(_____) No possibility of settlement.

**(c)   Counsel (_____) do or (__X__) do not intend to hold additional settlement conferences among themselves prior to the close of discovery. The proposed date of the next settlement conference is _____, 20___.**

**(d)   The following specific problems have created a hindrance to settlement of this case.**

The parties significantly differ in their current assessment of the value of

the case.

**14.      Trial by Magistrate Judge:**

**Note: Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.**

**(a)      The parties (____) do consent to having this case tried before a magistrate judge of this Court.  A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to      the      clerk court this _____ day of 2020.**

**(b)      The parties ( X ) do not consent to having this case tried before a magistrate judge of this Court.**

_/s M. Travis M. Foust_                              _/s Michael W. Johnston_
M. Travis Foust                                      Michael W. Johnston
Counsel For Plaintiff                                Counsel For Defendants
Georgia Bar No. 104996                               Georgia Bar No. 396720
Parks, Chesin & Walbert, P.C.                        King & Spalding LLP
75 Fourteenth Street, N.E., Suite 2600               1180 Peachtree Street
Atlanta, Georgia  30309                              Atlanta, Georgia  30309
404-873-8000                                         404-572-4600
404-873-8050 (Fax)                                   404-572-5100 (Fax)
mfoust@pcwlawfirm.com                                mjohnston@kslaw.com

21

\* \* \* \* \* \* \* \* \* \* \* \* \*

## SCHEDULING ORDER

Upon review of the information contained in the Joint Preliminary Report and Discovery Plan form completed and filed by the parties, the Court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as herein modified:

_____

_____

_____

_____

_____

IT IS SO ORDERED, this _____ day of _____, 20___.


_____
UNITED STATES DISTRICT JUDGE