IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| PAUL ZWIER, | § § | |
| Plaintiff, | § § | Civil Action File No. |
| v. | § § | 1:20-cv-03265-MHC-RDC |
| EMORY UNIVERSITY and JAMES B. HUGHES, JR., | § § § | **JURY TRIAL DEMANDED** |
| Defendants. | § § § | |

**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND [PROPOSED] ORDER ("ESI Protocol")**

1. **PURPOSE AND SCOPE**

Absent special circumstances and as a supplement to any applicable rules and orders, the specifications set forth below shall govern the production of all documents, transcripts of prior testimony, exhibits, electronically stored information (ESI), and any other materials and information (including, to avoid any ambiguity, any copies, summaries, or derivations thereof) produced by the Parties during discovery in the above-captioned action.

2. **COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter. The Parties agree that any

discovery shall be proportional to the needs of the case and as such requests for production of ESI and related responses will be reasonably targeted, clear, and as specific as possible. The agreements set forth herein do not constitute a waiver of any kind, by any party, of any valid objection to the production of particular ESI.

3. **SEARCH**

The Parties may meet and confer in good faith regarding searching for responsive documents. The Parties may implement reasonable and proportional search processes to locate potentially responsive documents including search terms, custodians, date filters, and/or technological solutions such as predictive coding. The Parties may conduct further review and/or analysis on any document identified through a search process to determine responsiveness and privilege. The parties may meet and confer to discuss the burden, accessibility and discoverability of productions from non-traditional data sources (e.g., mobile devices, social media, chat applications, audio and video files, etc.). To the extent that any data from non-traditional data sources will be produced, it will be done so in a reasonably useable form.

4. **PRODUCTION FORMATS**

   a) *General Format Information.* The Parties agree to produce documents in single-page, Group IV TIFF image file format with Concordance-

compatible image and data load files (i.e., .OPT and .DAT files) using standard Concordance delimiters. If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. Productions will be delivered via secure electronic file transfer system or shipped on encrypted physical media, such as CDs, DVDs or hard drives.

b)   *Metadata.* The metadata fields set out in Appendix 1 will be produced in the .DAT data load file to the extent already in existence and reasonably accessible or available. The first line in each Concordance compatible .DAT file shall be the header containing the agreed-upon metadata field names, and each subsequent line shall contain the fielded data for each document.

c)   *Production Specifics.*

   (i)   Each image should be named with its corresponding bates number. TIFF files must be produced in Group IV format with minimum resolution of 300 dpi. Bates numbers, confidentiality designations, and redactions shall be burned into the TIFF image files.

(ii) Image and document break information in .OPT image load files must correspond to the beginning bates number in the .DAT metadata load file. Each TIFF file produced must be referenced in the production's corresponding .OPT image load file.

(iii) Any document being produced in color shall be produced as color 300 dpi single-page JPEG files. No party is required to produce documents in color in the first instance. If the receiving party has good cause to make reasonable requests for production of certain documents in color, the receiving party may do so by providing: (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of the need for production in color format. The producing party shall not unreasonably deny such requests but need not make such production until the Parties reach agreement regarding the additional costs associated with the production of documents in color.

(iv) Excel files, .CSV files, audio/visual files, and other documents that are unable to be converted to .tiff format in a reasonably useable manner shall be produced in native format ("Native

Files"). Each Native File shall be produced with a corresponding slip-sheet TIFF placeholder image file, which will contain burned in bates numbers, confidentiality designations and language indicating that the document is being produced as a Native File. Native Files shall be named with the beginning Bates number that is assigned to that specific record in the production. A "NativeLink" entry for each spreadsheet shall be included in the .DAT load file indicating the relative file path to each native file in the production volume. Native Files shall be produced with extracted text and applicable metadata fields as set forth in Appendix 1. For Native Files that contain redactions, the Parties may either apply the redactions directly on the native file itself or may produce TIFF image files with burned-in redactions in lieu of a Native File and TIFF placeholder image.

(v) Other than as specifically set forth in the paragraph above, a producing party need not produce documents in native format.

(vi) For each produced document, an extracted text file shall be provided along with its corresponding TIFF image file(s) and metadata. Each extracted text file shall be named according to

5

       the beginning Bates number that is assigned to that specific record in the production, followed by .txt.  File names shall not contain any special characters or embedded spaces.  The text of native files shall be extracted directly from the native file.  However, if a document has been redacted, Optical Character Recognition ("OCR") of the redacted document will suffice in lieu of extracted text.

(vii)  Bates numbering must maintain consistent padding (e.g., with a consistent number of leading zeros) across the entire production and be sequential within a given document.  The numbering convention shall be consistent throughout rolling productions.  There shall be no spaces between the prefix and numeric value.  No special characters shall be used other than underscores and dashes.  If suffixes are used, they shall be in dot notation (e.g., BATES000000001.001).  Bates numbers shall be branded at the bottom of all TIFF images and shall not obscure any part of the underlying image.

(viii)  Parent-child relationships (the association between e-mails and attachments) will be preserved.  Document families must be

    produced consecutively with the family relationship noted in the appropriate metadata field(s).

(ix) Confidentiality designations, where appropriate, may be stamped onto images.

(x) Each party may normalize all ESI produced in this case to a single time zone (e.g., GMT, UTC, EST, etc.).

(xi) A Producing Party shall globally deduplicate (i.e. across custodians) using commercially acceptable e-Discovery software that utilizes either MD5 or SHA1 cryptographic hash values to de-duplicate ESI (at the document [i.e., parent] level).  The identity of the primary custodian and other processed and agreed-upon custodians that possessed all de-duplicated items at the time of production shall be provided in the "Custodian" field of the single record that is produced.  Multiple custodians in the "Custodian" field shall be separated by a semicolon.  Hard-copy documents shall not be eliminated as duplicates of responsive ESI.  A producing party may also de-duplicate emails in such a way as to eliminate earlier or incomplete chains of emails and produce only the most complete iteration of an email chain

("email thread suppression"). If a producing party elects to utilize such email thread suppression for its productions, it shall use commercially acceptable e-Discovery software to do so (e.g., Relativity Analytics, Brainspace, etc.). Any party opting to deduplicate in a different manner from the foregoing procedures shall disclose its deduplication methodology to the receiving party. If the receiving party objects to the methodology, it shall timely raise those concerns with the producing party.

(xii) The Parties shall make reasonable efforts to remove passwords or other security protection from potentially responsive ESI documents.

(xiii) Common system and program files as defined by the NIST library (which is commonly used to exclude system and program files from document review and production) need not be processed, reviewed or produced.

(xiv) To the extent responding to a discovery request requires production of ESI contained in a database, the producing party may comply with the discovery request by querying the database and generating a report ("Structured Data Report") in a

reasonably usable and exportable electronic format (for example, in Excel or .CSV format).  To the extent available and reasonably accessible, the first line in the Structured Data Report will show the column headers for each field of data included in the Structured Data Report.

(xv) ESI that is (i) used primarily for backup or disaster recovery purposes; or (ii) stored on any computers, servers, external hard drives, or other media created for disaster recovery purposes (collectively, "Backup ESI"), need not be preserved or produced.

(xvi) All productions are subject to any Protective Order entered by the Court in this case.  Pursuant to the applicable rules and any Protective Order, production of a privileged or work-product protected information is not a waiver in the pending case or in any other federal or state proceeding.

(xvii) Nothing in this ESI Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  The Parties do not waive any objections as to the production, discoverability,

admissibility, or confidentiality of any information or documents.

5.     **MODIFICATION**

This ESI Protocol may be modified by agreement of the affected Parties or by the Court for good cause shown.  Nothing in this ESI Protocol waives the right of any Party to petition the Court for an Order modifying its terms upon good cause shown, provided, however, that the affected Parties must first meet and confer and use reasonable best efforts to negotiate an exception from or modification to this ESI Protocol prior to seeking relief from the Court.

## Appendix 1: ESI Metadata and Coding Fields

| Field Name | Description of Field |
|---|---|
| BegBates | Beginning document number |
| EndBates | Ending document number |
| BegAttach | Beginning document number of family unit |
| EndAttach | Ending document number of family unit |
| All Custodians | All production custodians (including the identity of other custodians for deduplicated records). Multiple custodians in the "Custodian" field shall be separated by a semicolon. |
| Attachment Count | Number of attachments |
| Author | Author field extracted from the metadata of the native file |
| From | Sender of the e-mail message |
| Recipient(s) | Recipient(s) of the e-mail message (To) |
| CC | Recipient(s) of "carbon copies" of the e-mail message |
| BCC | Recipient(s) of "blind carbon copies" of the e-mail message |
| Email Subject | Email Subject |
| Sent Date/Time | Date and time the e-mail message was sent (produced in "MM/DD/YYYY HH:MM AM or PM" format) |
| File Type | Email, Attachment, individual file |
| File Extension | File extension of document (.msg, .doc, .xls, etc.) |
| File Name | Name of original file |
| Title | Title of a non-email document |
| Hash Value | MD5 or SHA-1 Hash Value, unique document identifier |
| Nativelink | Relative file path to each native file in the production volume |
| Textpath | The path to the corresponding OCR or extracted text file included with a production volume. |
| Modified Date/Time | For non-emails (produced in "MM/DD/YYYY HH:MM AM or PM" format) |
| Confidentiality | Confidentiality designations in any Protective Order |

**IT IS SO STIPULATED,** through Counsel of Record.

Respectfully submitted,

Dated:  February 5, 2021.

| | |
|---|---|
| *s/ A. Lee Parks* <br> A. Lee Parks, Jr. <br> Georgia Bar No. 563750 <br> lparks@pcwlawfirm.com <br> M. Travis Foust <br> Georgia Bar No. 104996 <br> tfoust@pcwlawfirm.com <br> PARKS, CHESIN & WALBERT, PC <br> 75 Fourteenth Street, 26th Floor <br> Atlanta, Georgia 30309 <br> Telephone: (404) 873-8000 <br> Facsimile: (404) 873-8050 <br><br> Attorneys for Plaintiff <br> PAUL ZWIER | *s/ Michael W. Johnston* <br> Michael W. Johnston <br> Georgia Bar No. 396720 <br> mjohnston@kslaw.com <br> Rebecca Cole Moore <br> Georgia Bar No. 177309 <br> rmoore@kslaw.com <br> KING & SPALDING LLP <br> 1180 Peachtree Street, NE <br> Atlanta, Georgia 30309 <br> Telephone: (404) 572-4600 <br> Facsimile: (404) 572-5100 <br><br> Attorneys for Defendants <br> EMORY UNIVERSITY AND <br> JAMES B. HUGHES, JR. |

# [PROPOSED] ORDER

**IT IS ORDERED** that the foregoing ESI Protocol is approved.

Dated:_____

_____ <br>
Hon. Regina D. Cannon <br>
United States Magistrate Judge